Slip Op. 17-25

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| AMERICAN FURNITURE MANUFACTURERS COMMITTEE FOR LEGAL TRADE, and VAUGHAN-BASSETT FURNITURE COMPANY, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Before: Jane A. Restani, Judge <br><br> Court No. 16-00070 |

**OPINION**

[Defendant's motion to dismiss action under 28 U.S.C. § 1581(c) is granted.]

Dated: March 13, 2017

J. Michael Taylor, King & Spalding LLP, of Washington, DC, argued for plaintiffs. With him on the brief were Daniel L. Schneiderman and P. Lee Smith.

Douglas G. Edelschick, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant. With him on the brief were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director. Of counsel on the brief was Heather N. Doherty, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Restani, Judge: This matter is before the court on defendant United States ("the government")'s motion to dismiss a complaint filed by plaintiffs American Furniture Manufacturers Committee for Legal Trade and Vaughan-Bassett Furniture Company, Inc. (collectively, "AFMC"), for lack of subject-matter jurisdiction pursuant to U.S. Court of International Trade Rule 12(b)(1). Def.'s Mot. to Dismiss for Lack of Jurisdiction 1, ECF No. 28 ("Mot. to Dismiss"). AFMC challenges the final results of the tenth administrative review of

the antidumping ("AD") duty order on certain wooden bedroom furniture ("WBF") from the People's Republic of China ("PRC"), covering the period of review ("POR") of January 1, 2014, through December 31, 2014.  See Wooden Bedroom Furniture from the People's Republic of China:  Final Results and Final Determination of No Administrative Review, in Part:  2014 Administrative Review, 81 Fed. Reg. 21,319, 21,319 (Dep't Commerce Apr. 11, 2016) ("Final Results").  It asserts jurisdiction under 28 U.S.C. § 1581(c) over a challenge to a final reviewable determination of the U.S. Department of Commerce ("Commerce") under 19 U.S.C. § 1516a.  For the reasons stated below, the court grants the government's motion.

## BACKGROUND

On March 2, 2015, Commerce initiated the instant tenth administrative review of WBF from the PRC.  Initiation of Antidumping and Countervailing Duty Administrative Reviews, 80 Fed. Reg. 11,166, 11,168–70 (Dep't Commerce Mar. 2, 2015); see also Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order:  Wooden Bedroom Furniture from the People's Republic of China, 70 Fed. Reg. 329, 329 (Dep't Commerce Jan. 4, 2005).  Commerce selected Shanghai Jian Pu Import & Export Co., Ltd. ("Jian Pu") as the sole mandatory respondent because it was the only respondent for which a request for review had not been withdrawn and it also had provided the information required by Commerce to be considered for status separate from the PRC-wide entity.  Decision Memorandum for Preliminary Results of Antidumping Duty Administrative Review:  Wooden Bedroom Furniture from the People's Republic of China at 5, PD 203 (Dec. 2, 2015) ("Preliminary I&D Memo").

On December 14, 2015, Commerce published its preliminary results.  Wooden Bedroom Furniture from the People's Republic of China:  Preliminary Results of Antidumping Duty

Administrative Review; 2014, 80 Fed. Reg. 77,321, 77,321 (Dep't Commerce Dec. 14, 2015) ("Preliminary Results").  After reviewing the information submitted by Jian Pu, Commerce determined that it was part of the PRC-wide entity because it did "not satisfy the criteria demonstrating an absence of de facto government control over export activities" as the government of the PRC has a "significant ownership interest in Jian Pu."  Preliminary I&D Memo at 8.  Commerce, therefore, applied a PRC-wide rate of 216.01% to Jian Pu's exports.  Preliminary Results, 80 Fed. Reg. at 77,322.  Commerce also dismissed AFMC's duty evasion allegations, reasoning that producers that are part of the PRC-wide entity would be unable to continue to evade AD duties by funneling subject merchandise through Jian Pu both because Jian Pu's past entries would be liquidated at the PRC-wide rate and because future entries would be subject to a higher cash deposit rate reflective of the PRC-wide rate.  Preliminary I&D Memo at 10.  At AFMC's request, Commerce indicated it would "forward [AFMC's] allegations to [U.S. Customs and Border Protection ("Customs")] for further investigation."  Id.

      Commerce's Final Results left unchanged its Preliminary Results.  Wooden Bedroom Furniture from the People's Republic of China:  Issues and Decision Memorandum for the Final Results of the 2014 Administrative Review at 1, PD 212 (Apr. 1, 2016) ("I&D Memo").  Because Commerce continued to find that Jian Pu was part of the PRC-wide entity subject to the 216.01% rate, it determined that AFMC's additional arguments regarding Jian Pu's failure to cooperate and the application of adverse facts available ("AFA")[1] were "moot."  Final Results, 81 Fed. Reg. at 21,319; I&D Memo at 5.

---

[1] Although the term "AFA" is not referenced in either the statute or the agency's regulations, it can be understood, within the context of this case, as referring to Commerce's application of the "facts otherwise available" and "adverse inferences" provisions of 19 U.S.C. § 1677e to arrive at
(continued . . .)

On April 26, 2016, AFMC filed its summons and complaint before the court. Summons, ECF No. 1; Compl., ECF No. 7. In the operative amended complaint, AFMC contests the Final Results and claims that: (1) Commerce failed to fully investigate AFMC's evasion allegations and send the information to Customs (Count One); (2) Commerce did not address AFMC's arguments regarding Jian Pu's failure to cooperate and make an AFA determination (Count Two); (3) Commerce erred by refusing to find that Jian Pu was not the price discriminator for at least some of the subject merchandise claimed to be exported by Jian Pu (Count Three); and (4) the court should remand to allow Commerce to reopen the record in light of new evidence demonstrating that Commerce's proceedings were tainted by fraud (Count Four). Am. Compl. ¶¶ 12–21, ECF No. 16. Thereafter, Commerce referred the matter to Customs by letter, which outlined AFMC's fraudulent funneling allegations and attached the relevant documents containing the allegations. Commerce Evasion Letter to Customs at 1–2, PD 218 (May 12, 2016) ("Evasion Letter").

The government moves to dismiss the amended complaint and argues that AFMC cannot satisfy Article III of the U.S. Constitution's standing requirement because it has not "suffered a concrete, particularized, and actual injury that is fairly traceable to the challenged decision by Commerce." Mot. to Dismiss at 4–6. AFMC responds that it has standing in part because it is injured by Commerce's failure to take certain steps to prevent duty evasion. Pls.' Resp. in Opp'n to Def.'s Mot. to Dismiss for Lack of Jurisdiction 5–6, ECF No. 30 ("AFMC Resp."). AFMC argues that Commerce's ability to make findings regarding evasion can be a type of relief,

---

a replacement margin. By statute, Commerce may use "facts otherwise available" in the particular situations set forth in § 1677e(a), and it may apply "adverse inferences" pursuant to § 1677e(b) when "an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information . . . ."

beyond simply setting a margin, as doing so would necessarily require Customs to assess penalties in addition to AD duties. Id. at 7–11.

**DISCUSSION**

A plaintiff bears the burden of establishing that federal jurisdiction is proper, a burden that includes satisfying Article III's standing requirement. Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 37–38 (1976); Canadian Lumber Trade All. v. United States, 517 F.3d 1319, 1331 (Fed. Cir. 2008). Accordingly, the plaintiff must (1) "have suffered an 'injury in fact,'" which is an injury that is both "concrete and particularized" and also "actual or imminent," rather than conjectural or hypothetical, (2) establish a causal connection by showing that the injury is fairly traceable to the defendant's challenged conduct, and (3) demonstrate that the injury is likely to be "redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992) (first quoting Allen v. Wright, 468 U.S. 737, 756 (1984); then quoting Simon, 426 U.S. at 38, 41). Although causal connection typically is not "th[e] result [of] the independent action of some third party not before the court," id. (alterations in original) (quoting Simon, 426 U.S. at 42), the requirement "does not exclude injury produced by determinative or coercive effect upon the action of someone else," Bennett v. Spear, 520 U.S. 154, 169 (1997).

AFMC's alleged injuries are not "fairly traceable" to an action by Commerce, nor may they be redressed by a decision of this court in this case on this cause of action challenging Commerce's Final Results. Here, no action by Commerce gives rise to AFMC's alleged injury of lost sales due to duty evasion.[2] AFMC's injury is not fairly traceable to Commerce's failure

---

[2] AFMC alleges that "various Chinese producers subject to the 216.01% PRC-wide rate, along with importers and in coordination with Jian Pu, were evading the [AD] order via a scheme to
(continued . . .)

to "fully investigate" the allegations or make explicit factual findings regarding the evasion scheme and Jian Pu's role in it. See Allied Pacific Food (Dalian) Co. v. United States, 32 CIT 1328, 1361–62, 587 F. Supp. 2d 1330, 1365 (2008) (finding the injury to the mandatory respondent was not fairly traceable to Commerce's failure to recalculate the separate rate as that rate did not affect the assessment of the mandatory respondent's duties). Instead, Commerce found in its Final Results that Jian Pu is part of the PRC-wide entity and assigned the 216.01% PRC-wide rate to Jian Pu. Thus, any PRC company selling through Jian Pu will get the rate it merits as part of the PRC-wide entity. Commerce, therefore, satisfied its obligation under the statute to assess an AD rate for the individually reviewed respondent, pursuant to 19 U.S.C. § 1675(a)(1)(B).[3] Indeed, AFMC received the exact relief that it sought before Commerce: for Jian Pu to receive the PRC-wide rate, an AFA rate, of 216.01% and anyone using Jian Pu as a front to receive the same rate. Under the United States's retrospective system, not only does that assessment rate apply to entries made during the POR, but it also applies prospectively to cash deposits for entries of subject merchandise made by Jian Pu or entities using Jian Pu's identifiers.

---

provide for the underpayment of duties using Jian Pu's much lower 6.65% cash deposit rate." Am. Compl. ¶ 19. AFMC explains in its briefing that it has suffered an injury in fact because it has "suffer[ed] lost sales and lost revenues as a result of the circumvention and evasion schemes" by "which importers avoid paying the full antidumping duties owed" and thus "enable larger quantities of WBF to be imported, and at lower prices, than would otherwise exist if antidumping cash deposits and duties were properly collected." AFMC Resp. at 5. This may be an injury but it cannot be redressed by an action seeking to change Commerce's final determination here.

[3] To the extent that Count One of AFMC's amended complaint identifies "Commerce's apparent failure to forward relevant information to [Customs] for further investigation," Am. Compl. ¶ 14, that claim is mooted by Commerce's May 12, 2016, letter in which Commerce did forward AFMC's allegations to Customs. Evasion Letter at 1–2. Regardless, given the assertion of jurisdiction under 28 U.S.C. § 1581(c), there is no relief the court can afford on this claim.

Despite AFMC's charge that Commerce should have made additional factual findings, the "court has repeatedly held that a party lacks standing to challenge a subsidiary finding in an administrative determination in which it prevailed on the merits." Cámara Nacional de las Industrias Azucarera y Alcoholera v. United States, 118 F. Supp. 3d 1360, 1365 (CIT 2015).  It does not appear that there is any other remedy Commerce could have afforded AFMC.  See, e.g., Royal Thai Gov't v. United States, 978 F. Supp. 2d 1330, 1332, 1333 (CIT 2014) (explaining that, where a foreign government challenged certain findings in Commerce's negative determination in a countervailing duty investigation, "no remedy would be available as Commerce's existing negative determination is all that plaintiff could hope to obtain on appeal").

The "determinative or coercive effect" of Commerce investigating the allegations is not the issuance of penalties by Customs.  (Commerce does not impose penalties on importers or exporters.  See, e.g., 19 U.S.C. § 1592 (authorizing Customs, not Commerce, to assess penalties).)[4]  According to AFMC, its requested relief "is for Commerce to make the findings necessary to enable [Customs] to do its job."  AFMC Resp. at 11.  Even if the court remanded the case to Commerce to fully investigate AFMC's allegations, a favorable decision by the court would only require Commerce to consider the allegations, and would not ensure Commerce would make the desired findings.  And, assuming Commerce, an entity without subpoena power, see Allegheny Ludlum Corp. v. United States, 287 F.3d 1365, 1372 (Fed. Cir. 2002), did make the desired findings, Customs would not then be required to initiate the investigation that AFMC seeks, and the investigation might not result in an enforcement action or penalties.  Penalties

---

[4] Instead, as the Court of Appeals for the Federal Circuit has explained, "[t]he antidumping laws 'are remedial not punitive[.]'" KYD, Inc. v. United States, 607 F.3d 760, 767 (Fed. Cir. 2010) (quoting NTN Bearing Corp. v. United States, 74 F.3d 1204, 1208 (Fed. Cir. 1995)).

would be enforced under 19 U.S.C. § 1592 on importers shown to have committed fraud, gross negligence, or negligence. Findings about which exporting entity was the "price discriminator" would not be sufficient. Redressability in this case, therefore, is speculative. See <u>Defenders of Wildlife</u>, 468 U.S. at 561 (setting forth that redressability that is "speculative" does not satisfy Article III); <u>see also</u> <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 86–87, 105–09 (1998) (holding the plaintiff lacked standing as it had not demonstrated redressability of injuries from defendant's violations of an environmental reporting statute because none of the forms of relief requested would reimburse the plaintiff or mitigate the effects of defendant's actions).

For example, in <u>Ontario Forest Indus. Assoc. v. United States</u>, the court held that plaintiff's injury was not redressable where the plaintiff sought the court to compel the United States to appoint a member to a particular committee created by the North America Free Trade Agreement so that the committee could conduct proceedings. 30 CIT 1117, 1133, 444 F. Supp. 2d 1309, 1324 (2006). The court explained that Canada would still need to take the "independent action" of selecting a member to the committee to allow the committee's proceedings to commence. <u>Id.</u> There, the United States' appointment of a member was a necessary but not sufficient step to redress the plaintiff's injury of delayed committee proceedings. This case presents an even weaker theory of redressability as requiring Commerce to investigate the allegations and make factual findings is not a prerequisite for Customs to initiate a 19 U.S.C. § 1592 investigation. Even absent Commerce's Evasion Letter forwarding AFMC's allegations to Customs, AFMC could itself have sent its allegations to Customs and requested that Customs look into potential duty evasion. It would be pure speculation that granting AFMC's request for relief would lead to the ultimate redress AFMC desires, i.e., the issuance of penalties by Customs.

Bennett v. Spear is readily distinguishable. 520 U.S. at 168. There, a petitioner challenged a biological opinion of the Fish and Wildlife Service ("FWS"). Id. The court held that the petitioner met the fairly traceable and redressability requirements because, even though the proximate cause of the injury was a decision by the Bureau of Reclamation and not FWS, FWS's biological opinion had a "powerful coercive effect on the" Bureau of Reclamation. Id. at 169–70. This was so because the FWS's opinion could subject the Bureau to "substantial civil and criminal penalties" pursuant to the Endangered Species Act. Id. Clearly, no comparable powerful coercive effect exists here to require Customs to act in the light of particular findings by Commerce. See Defenders of Wildlife, 504 U.S. at 562 (explaining that in cases where an "injury arises from the government's allegedly unlawful regulation" of a third party over which the court does not have control, the burden is on the plaintiff to provide facts showing the third party will act "in such a manner as to produce causation and permit redressability of injury"). AFMC, therefore, has failed to establish that it has standing to bring any of the counts set forth in its amended complaint.[5]

## CONCLUSION

AFMC achieved everything that it could obtain in the proceeding at issue after it withdrew its requests for review of over one hundred companies. The sole mandatory respondent left was found to be part of the PRC-wide entity, which was subject to an AFA rate of 216.01%. No challenge was made to that rate in the administrative proceeding and none is

---

[5] Although AFMC admits it considered action under 28 U.S.C. § 1581(i) jurisdiction, it chose to proceed under § 1581(c). For the reasons set forth in the text, it is highly unlikely that a viable action based on similar allegations under § 1581(i) challenging Commerce's administration and enforcement of the unfair trade laws could withstand a motion to dismiss.

made here.  Essentially, the <u>Final Results</u> are not challenged.  For the foregoing reasons, the court lacks subject-matter jurisdiction over AFMC's amended complaint.  The government's motion is granted.  Judgment will enter accordingly.

        /s/ Jane A. Restani
        Jane A. Restani
        Judge

Dated: March 13, 2017
      New York, New York